UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Freund, et al., | ) <br> ) <br> ) Civil Action No. 06 CV 1637 (KMK) <br> ) <br> Plaintiffs, ) <br> ) <br> ) <br> -against- ) <br> ) <br> ) <br> The Republic of France, Société ) <br> Nationale Des Chemins De Fer Français, ) <br> Caisse Des Dépôts Et Consignations, ) <br> ) <br> Defendants. ) <br> ) |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE
MOTION TO DISMISS BY THE REPUBLIC OF FRANCE**

Jeremy G. Epstein (JE-1606)
Brendan N. Snodgrass (BS-3709)
SHEARMAN & STERLING LLP
599 Lexington Avenue
New York, New York  10022
Telephone: (212) 848-4000

*Attorneys for Defendant
the Republic of France*

## Table of Contents

Page

I. FRANCE IS ENTITLED TO SOVEREIGN IMMUNITY ................................................. 1

    A. Garb Requires Dismissal of All Claims Against France Because the Property Is Not Located in the United States ......................................................... 1

    B. Plaintiffs Fail to Make Any Allegation Regarding Administrative Remedies ........ 3

II. ABSTENTION IS APPROPRIATE ................................................................................ 4

    A. Comity ...................................................................................................................... 5

    B. Forum Non Conveniens .......................................................................................... 6

        1. Plaintiffs' Choice of Forum Is Not Determinative ....................................... 6

        2. France Provides a Wholly Adequate Alternative Forum ............................. 7

        3. Both Public and Private Factors Mandate Dismissal In Favor of France .... 7

    C. Political Question .................................................................................................... 8

III. THE STATUTE OF LIMITATIONS HAS RUN ON PLAINTIFFS' CLAIMS ................ 9

CONCLUSION ............................................................................................................................. 11

The Republic of France ("France") respectfully submits this reply memorandum of law in further support of its motion to dismiss the class action complaint (the "Complaint") pursuant to Federal Rules of Civil Procedure 12(b)(1), (2), (5), and (6).[1]

## I.  FRANCE IS ENTITLED TO SOVEREIGN IMMUNITY

### A.  *Garb* Requires Dismissal of All Claims Against France Because the Property Is Not Located in the United States

Subject matter jurisdiction as to France could only exist if the Complaint alleged that the property at issue was present in the United States.  In its opening brief, France argued that the Second Circuit's decision in *Garb v. Republic of Poland*, 440 F.3d 579, 588 (2d Cir. 2006) required dismissal because the Complaint fails to make this simple allegation.  (Br. at 8-10.)  Plaintiffs' opposition concedes that the property is *not* in the United States.  (Opp. at 18.)  Plaintiffs' sole response is to "submit that the *Garb* holding is not so narrow" (*id.*) and to propose a "piggy back" rule, where subject matter jurisdiction over an agency or instrumentality automatically creates subject matter jurisdiction over the sovereign itself.  Such a rule is directly inconsistent with *Garb*.

*Garb* explained that "the first clause of the fourth element of § 1605(a)(3) . . . sets forth the conditions under which a plaintiff may assert takings claims against 'foreign state[s].'" 440 F.3d at 589.  Specifically, "[t]he first of these alternative showings sets a higher threshold of proof for suing foreign states in connection with alleged takings by requiring the property at issue be 'present in the United States.'"  *Id.*, at 589.  This "higher threshold" bars exercising jurisdiction over property held by the sovereign within the sovereignty.  Plaintiffs do not even attempt to distinguish other cases relied on by France that reach the same result as *Garb*.  *See* Br. at 9 (citing *Dayton v. Czechoslovak Socialist Rep.*, 834 F.2d 203, 206 (D.C. Cir. 1987); *Hirsh v.*

---

[1] Defendant France incorporates by reference the submissions and arguments made by Defendants Société National des Chemins de fer Français ("SNCF") and Caisse des Dépôts et Consignations ("CDC").

*State of Israel*, 962 F. Supp. 377, 383 (S.D.N.Y. 1997).) Here, there is no question that Plaintiffs are suing a foreign state in connection with alleged takings and that the property at issue is not present in the United States.

Plaintiffs simply disregard *Garb*'s directive that jurisdiction over a foreign sovereign can only be based on the first prong of the fourth element. They focus exclusively on the second prong, arguing that it can furnish a basis for subject matter jurisdiction. Plaintiffs take this position notwithstanding their concession that *Garb* refused to apply the second prong to the Treasury of Poland because it "enjoys such identity with the State of Poland itself that *the second prong of the 'nexus' requirement of § 1605(a)(3) did not apply*." (Opp. at 18.) Plaintiffs argue this case is different because "once they have demonstrated that France's agencies or instrumentalities, *i.e.* the CDC and SNCF, fall within the scope of the [takings] exception, then the foreign state itself, France, is within the subject matter jurisdiction of this Court." (*Id.* at 19.)

Following Plaintiffs' logic would provide subject matter jurisdiction over a sovereign any time that there is subject matter jurisdiction over any agency or instrumentality. It would thus completely eliminate *Garb*'s "higher threshold of proof for suing [a] foreign state." Were that the intention of the FSIA, then Congress could have included that in the text of the FSIA. Instead, the rule is exactly as articulated in *Garb*, where the second clause of the fourth element only permits a plaintiff to bring suit against an "agency or instrumentality of [a] foreign state" and that the Republic of France cannot be an agency or instrumentality of a foreign state, because it is the foreign state itself. *Garb*, 440 at 589, citing 28 U.S.C. § 1605(a)(3).

Plaintiffs' sole support for their argument of "piggy back jurisdiction" is a recent decision by the Central District of California, *Cassirer v. Kingdom of Spain*, No. CV 05-3459-GAF (C.D. Cal. Aug. 30, 2006). *Cassirer* assumes, without analysis, that the second prong of the fourth element could be applied to the sovereign in the case (Spain). It does not address the relevant portions of *Garb* and, to the extent that it is inconsistent, should not be followed.

### B. Plaintiffs Fail to Make Any Allegation Regarding Administrative Remedies

In its opening brief, France argued that Plaintiffs' failure to exhaust their administrative remedies precludes them from alleging a violation of international law. (Br. at 7-8.) Plaintiffs' opposition does nothing to distinguish the cases cited by France (*e.g. Malewicz v. City of Amsterdam*, 362 F. Supp. 2d 298, 306-7 (D.D.C. 2005)) and does not challenge their legal import. In fact, Plaintiffs admit that "the issue of compensation is only one element of a violation of international law." (Opp. at 16.) Instead, Plaintiffs argue that because the FSIA does not discuss exhaustion of remedies, Plaintiffs cannot be required to make any such allegation. (Opp. at 16-17.)[2] Plaintiffs attempt to sidestep Justice Breyer's concurrence in *Republic of Austria v. Altmann*, 541 U.S. 677, 715 (2004), but fail to provide any persuasive reason why Justice Breyer's analysis of postdeprivation remedies is inapplicable here. The reasoning that underlies Justice Breyer's observation is compelling: a "taking" is actionable only if uncompensated. If a claimant has not been denied compensation, he cannot claim that his property has been "taken" within the meaning of the FSIA.[3]

Plaintiffs make no argument, and the Complaint contains no allegation, regarding they extent, if any, to which they have attempted to exhaust their administrative remedies. As set forth in the Declaration of Olivier Gremont (the "Gremont Declaration") submitted by CDC, the Complaint lacks these allegations because many of the Plaintiffs have *filed claims with the CIVS*. (Gremont Decl. ¶ 3.) Moreover, Plaintiffs admit to having "sent letters of demand to SNCF and France." (Opp. at 29, n.24.)

---

[2] Plaintiffs' only authority in support of their proposition is *Sarei v. Rio Tinto, PLC*, 456 F.3d 1069 (9th Cir. 2006), which involved the Alien Tort Claims Act, not the FSIA.

[3] Plaintiffs further argue that because the Torture Victims Protection Act (the "TVPA") (§ 1605(a)(7)(B)(i) of the FSIA) has a reference to an exhaustion requirement, Congress could not have intended for one to apply to § 1605(a)(3). This argument fails to take account of the fact that the FSIA was enacted in 1976, fifteen years before the TVPA was added in 1991. Therefore, there is no basis to conclude that by including an exhaustion requirement in the TVPA, Congress deliberately excluded an exhaustion requirement in § 1605(a)(3).

## II. ABSTENTION IS APPROPRIATE

Plaintiffs suggest that granting this motion on the basis of a doctrine of abstention would be an abdication of this Court's responsibilities. If judicial common sense were not enough to dispel that notion, Plaintiffs' reliance on *In re Assicurazioni Generali S.p.A. Holocaust Insurance Litig.*, 228 F. Supp. 2d 348 (S.D.N.Y. 2002) does. (Opp at. 26.) After Chief Judge Mukasey initially denied defendants' motion to dismiss under *forum non conveniens*, he reconsidered that decision and explained that, "[i]n light of the Supreme Court's decision in *American Insurance Association v. Garamendi*, 539 U.S. 396, 123 S.Ct. 2374, 156 L.Ed.2d 376 (2003), it appears that the laws supporting litigation of plaintiffs' benefits claims are preempted by a federal Executive Branch policy favoring voluntary resolution of Holocaust-era insurance claims through ICHEIC." *In re Assicurazioni Generali S.p.A. Holocaust Ins. Litig.*, 340 F. Supp. 2d 494, 497 (S.D.N.Y. 2004). The rule that emerges from Chief Judge Mukasey's decisions is that courts must carefully and deliberately consider the applicability of abstention doctrines and that there are times, such as this, where dismissing a case is not an abdication of the court's duties, but a fulfillment.

Plaintiffs endeavor to create an issue of fact that could preclude the application of certain abstention doctrines. They fail, however, to contest: (a) that the declaration of the CIVS Chairman, Gérard Gélineau-Larrivet (the "Gélineau-Larrivet Decl."), accurately describes the CIVS's basic structure and operations; (b) that the United States government endorsed the CIVS when it entered into the Washington Agreement; and (c) that 22 Plaintiffs have endorsed the CIVS by submitting their claims to it (as set forth in the Gremont Declaration, ¶ 3). Although Plaintiffs submit affidavits of two witnesses who claim that the CIVS process is flawed, there is not a single affidavit from any Plaintiff complaining of the process. Plaintiffs have failed to cast any doubt on the efficiency and quality of the work being done by the CIVS. Jurisdictional discovery is unnecessary.

### A.     Comity

The principles of international comity apply where a defendant points to conflict between the lawsuit at issue and specific legislative or judicial statements of policy of a foreign state or court. *Majorica, S.A. v. Majorica Int'l, Ltd.*, 687 F. Supp. 92, 96-97 (S.D.N.Y. 1988). Here, the record is replete with explicit statements of France, including the text of the Washington Agreement and the establishment of the CIVS process, pointing to a true conflict with the French state's well articulated policy of resolving these Holocaust-era claims outside the United States court system. The conflict between France's policy of resolving Plaintiffs' claims under the CIVS process and litigation under American law satisfies the Second Circuit's threshold requirement of a conflict between American law and that of the foreign jurisdiction. *In re Maxwell Commc'n Corp. v. Societe Generale*, 93 F.3d 1036, 1049-50 (2d Cir. 1996).[4]

Plaintiffs' reliance on *Bodner v. Banque Paribas*, 114 F. Supp. 2d 117 (E.D.N.Y. 2000), is inappropriate. (Opp. at 35.) In *Bodner,* the defendants argued that the Court should defer its proceedings in favor of the Matteoli Commission. With that background, the court's decision not to defer to Matteoli Commission, which had concluded its activities, published its final report, and dissolved was entirely understandable. *Id.*, at 130. Moreover, there was no "pending litigation in France, nor [was] the Court aware of any current law or policy of the French government which could either supplant or fully redress plaintiffs' claims." *Id.*

Circumstances have substantially changed since *Bodner*. France has explicitly outlined its "current law or policy" which supplants and fully redresses Plaintiffs' claims: the CIVS process.[5] Unlike in *Bodner*, there is now an ongoing process in France "which will

---

[4] Plaintiffs argue that "Defendants have not been able to cite to a single case in which a federal district court dismissed a case based on principles of international comity in deference to such a foreign commission." (Opp. at 36.) The court in *In re Nazi Era Cases Against German Defendants Litigation*, 129 F. Supp. 2d 370, 381 (D.N.J. 2001), dismissed claims in favor the German Foundation. (Br. at 13.)

[5] Plaintiffs' opposition suggests that the Second Circuit's decision in *Filetech, S.A., v. France Telecom, S.A.*, 157 F.3d 922, 932 (2d Cir. 1998) should be read to require a district court to discount a sovereign's statements of interest when it is a defendant in a lawsuit. (Opp. at 35.) *Filetech* says no such thing. Nonetheless, even if that were the

5

specifically address plaintiffs' claims or to which this Court could defer," making deference on comity grounds entirely appropriate. *Bodner,* 114 F. Supp. 2d at 130. There is more than a "possibility of an outcome that would violate (or implicate) French law"; there is certainty. *Id.*

Finally, there is no requirement that the United States have been actively involved in establishing the CIVS process. (Opp. at 37.) Rather, the interests of the United States in seeing this litigation dismissed, and those of France in respecting the integrity of the CIVS process, engage the doctrine of international comity and weigh heavily in favor of dismissal.

### B. *Forum Non Conveniens*

#### 1. Plaintiffs' Choice of Forum Is Not Determinative

Plaintiffs correctly articulate the Second Circuit's principle that "the more that a plaintiff, even a foreign plaintiff, chooses to sue in a United States court for 'legitimate reasons' the more deference must be given to that choice." *Bigio v. Coca-Cola Co.*, 448 F.3d 176, 179 (2d Cir. 2006), citing to *Iragorri v. United Techs. Corp.*, 274 F.3d 65, 73 (2d Cir. 2001). (Opp. at 25.) It is Plaintiffs' application of the standard that is problematic. In *Bigio*, the plaintiffs' choice of forum in the United States was upheld "*after [their] efforts to seek relief from the Egyptian authorities proved abortive.*" *Bigio*, 448 F.3d at 179 (emphasis added). Here, Plaintiffs have made no allegations that they have made efforts to recover from French authorities; in fact, Plaintiffs have repeatedly argued that they have no such duty and obligation. This is entirely at odds with Plaintiffs' recent disclosure in their brief that they have "sent letters of demand to SNCF and France." (Opp. at 29, n.24.) Moreover, most Plaintiffs have already recovered monies from the CIVS. (Gremont Decl. ¶¶ 3-4.) Plaintiffs cannot be permitted to split their claims and "cherry pick" which are resolved by the CIVS and which by the federal courts.

---

case, France's statements regarding the CIVS, such as those contained in the Washington Agreement, substantially pre-date this litigation and cannot be challenged as having been made purely for the purposes of this case.

6

### 2. France Provides a Wholly Adequate Alternative Forum

A substantial part of Plaintiffs' opposition is spent casting aspersions on the CIVS. Plaintiffs ask this Court to hold, as a matter of law, that the CIVS (which has been endorsed by both the United States and French governments) provides an illusory right. This is far from the truth. Mr. Gélineau-Larrivet's declaration is uncontested and establishes that the CIVS is not only adequate, but is superior. *See* Gélineau-Larrivet Decl. ¶ 8 (the Prime Minister always follows CIVS recommendations); ¶ 9 (the CIVS has recommended compensation in 7,467 of the 7,613 banking claims lodged); ¶¶ 14–20 (the CIVS rapporteurs work with claimants, and on their behalf, to investigate the facts underlying the claim); and ¶¶ 26-29 (special procedures have been created to specifically address bank related spoliation claims).

Plaintiffs' legal arguments regarding contingent fees and class actions are similarly unavailing. Contingent fees are available under French law;[6] even assuming they were not, it would be irrelevant. *See Coakes v. Arabian Am. Oil Co.*, 831 F.2d 572, 576 (5th Cir. 1987) (existence of fee-shifting and prohibitions on contingency-fee arrangements do not render an alternative forum inadequate). Similarly, the fact that French law does not permit class actions for these claims is irrelevant. (Opp. at 27.) *In re Lloyd's Am. Trust Fund Litig.*, 954 F. Supp. 656, 673 (S.D.N.Y. 1997) ("The absence of a rule providing for class actions in the alternative forum does not render the forum inadequate.").

### 3. Both Public and Private Factors Mandate Dismissal In Favor of France

Both the private and public law factors to be weighed in the third step of the *forum non conveniens* analysis indicate that dismissal of Plaintiffs' claims in this forum is warranted. Plaintiffs' concern that it would be strenuous for the elderly, non-foreign Plaintiffs to travel to France is a non-issue because "[t]o enable foreign claimants to attend Commission

---

[6] Article 10 of Law no 71-1130 of December 31, 1971, as modified.

7

hearings, on several occasions the Commission has traveled to Israel and the United States." (Gélineau-Larrivet Decl. ¶ 22.) Plaintiffs' sole public factors are that Congress has conducted hearings on the return of Holocaust assets and that the U.S. has numerous Holocaust survivors. (Opp. at 28.) This stands in marked contrast to the public factors that weigh against adjudication here. Plaintiffs effectively ask this Court to scrutinize the behavior of French government officials which should, for reasons of sound public policy, be decided in France.

Judge Marrero recently noted that "delicate" issues such as those implicating "the lawfulness of official conduct by foreign government agents . . . [and] the need to allow the justice systems of other nations involved to apply their laws and reform their governmental institutions so as to adjudicate these controversies free from external interference" will fall within the realm of "political and public policy questions beyond the proper domain of our courts." *Turedi v. Coca Cola Co.*, No. 05-CV-9635, --- F. Supp. 2d --- 2006 WL 3187156, *12 (S.D.N.Y. Nov. 2, 2006) (dismissing claims under the Alien Tort Statute, the Torture Victims Protection Act, the Racketeer Influenced and Corrupt Organizations Act, and New York common and statutory law based on the doctrine of forum non conveniens).

C.   **Political Question**

*Whiteman v. Dorotheum GmbH & Co. KG*, involved substantially similar facts and resulted in the Second Circuit's dismissal of Holocaust-related claims that were already the subject of extra-judicial proceedings in a foreign country. 431 F.3d 57 (2d Cir. 2005). Plaintiffs make no attempt to address the three factors articulated by the Second Circuit in *Whiteman*: 1) has the Executive Branch entered an executive agreement; 2) has the United States Government, via executive agreement, established an alternate international forum that it believes, as a matter of foreign policy, is superior to litigation; and 3) will the pendency of the claims substantially undermine foreign policy. (*See* Br. at 19-22; *see also Whiteman*, 431 F.3d at 59-60.)

8

*First*, the Washington Agreement creates an "all-embracing and enduring legal peace with respect to all claims arising out of World War II" relating to claims against French banks. (Snodgrass Decl. Ex. B.) *Second*, as in *Whiteman*, the United States has indicated that the CIVS should be:

> the exclusive fora and remedies for the resolution of all claims asserted against banks arising from their activities during World War II, *including without limitation those relating to spoliation of assets confiscated from deportees and internees*."

(Statement of Interest of the United States of America dated June 29, 2006, p. 11 (the "Statement of Interest").) *Third*, the foreign policy goal of "complete disgorgement of assets never restituted to their rightful owners by the French Government, banks, and other financial institutions" via the Washington Agreement's chosen forum would clearly be undermined by permitting private litigation in this country. (Statement of Interest, p. 8.)

### III.   THE STATUTE OF LIMITATIONS HAS RUN ON PLAINTIFFS' CLAIMS

*First*, the continuing violations doctrine does not toll the statute of limitations. The court in *Bodner* explained that the doctrine, under which the statute of limitations accrues from the date of the last wrongful act that constitutes the continuing violation, is most frequently invoked in the employment discrimination context. 114 F. Supp. 2d at 134. *Bodner* applied this doctrine in the context of Holocaust-related claims, however, because "the continued denial of [plaintiffs'] assets, *as well as facts and information relating thereto*, constitutes a continual violation of international law." *Id.* Here, Plaintiffs have had full access to facts and information regarding their claims through the CIVS. More recent cases have helped to clarify that the continuing violations doctrine can only be invoked based on allegations of "new unlawful conduct by Defendants," as opposed to "continuing adverse consequence of prior unlawful conduct." *In re African-Am. Slave Descendants Litig.*, 375 F. Supp. 2d 721, 777 (N.D. Ill. 2005).

*Second*, the doctrine of equitable tolling does not apply, both because claims have previously been filed against SNCF and French banks and because these Plaintiffs have filed

9

claims with the CIVS. Equitable tolling prevents the statute of limitations from running "against a plaintiff who is unaware of his cause of action." (Opp. at 48, citing *Long v. Abbot Mortgage Corp.*, 459 F. Supp. 108, 113 (D. Conn. 1978).) The facts here demonstrate that Plaintiffs were well aware of their putative claims. This is confirmed by objective and publicly-available information—other lawsuits that have been filed against SNCF (such as *Abrams v. Societe Nationale des Chemins de Fer Francais*, 175 F. Supp. 2d 423, 447 (E.D.N.Y. 2001)) and French banks (such as *Bodner*) and , which demonstrate that Plaintiffs were not precluded from becoming aware of their claims. Moreover, some Plaintiffs filed claims with the CIVS *before* this Complaint was filed, which demonstrates that they were aware of their causes of action.

*Finally*, the statute of limitations for war crimes is not limitless. In *In re Agent Orange Product Liability Litigation*, 373 F. Supp. 2d 7 (E.D.N.Y. 2005), Judge Weinstein did not, as Plaintiffs suggest, recognize that "there is no statute of limitations for war crimes such as those at issue in this case." (Opp. at 50.) In fact, Judge Weinstein dismissed a case against all defendants for alleged violations of domestic or international law. *In re Agent Orange*, 373 F. Supp. 2d at 145. With regard to the applicable statute of limitation under the Alien Tort Statute, Judge Weinstein adopted: "*for the purposes of this phase of the litigation, subject to reconsideration*, is the position of Professor Paust that '[u]nder international law, there are no statutes of limitation with respect to war crimes and other violations of international law.'" *Id.*, at 63 (emphasis added). Statutes of limitation have been applied in many cases that involve violations of international law. *See, e.g. Adler v. Taylor*, No. 04-CV-8472, 2005 WL 4658511, at *4-5 (C.D. Cal. Feb. 2, 2005) (dismissing plaintiffs' claims of conversion, replevin, constructive trust and restitution as barred by California's statute of limitations).[7]

---

[7] Plaintiffs have similarly failed to respond to France's argument that service or process was not effected. In its opening brief, France argued no request for service was ever provided as to France. Mr. Tonnel's (untranslated) affidavit does not contradict this.

## CONCLUSION

For the foregoing reasons and those previously submitted, the Complaint should be dismissed as against the Republic of France.

Dated:   New York, New York
December 1, 2006

Respectfully submitted,

SHEARMAN & STERLING LLP

By: _____
Jeremy G. Epstein (JE-1606)
Brendan N. Snodgrass (BS-3709)

599 Lexington Avenue
New York, New York  10022
Telephone: (212) 848-4000

*Attorneys for Defendant
the Republic of France*

11